IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES COLTRAIN,

Plaintiff,

v.

DOUGLAS A. COLLINS,[1] Secretary of Veterans Affairs,

Defendant.

Case No.: 3:22-cv-01760-AN

OPINION AND ORDER

Plaintiff James Coltrain brings this action against defendant Douglas A. Collins, alleging claims of race discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.[2] On December 4, 2024, defendant moved for summary judgment. After reviewing the parties' filings, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the reasons stated below, defendant's motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991), *cert. denied*, 505 U.S. 1206 (1992). "[T]he substantive law [determines] which facts are material." *Anderson v. Liberty Lobby, Inc.*,

[1] Plaintiff initially brought this action against Denis McDonough, former Secretary of Veterans Affairs. Pursuant to Federal Rule of Civil Procedure 25(d), Douglas A. Collins, current Secretary of Veterans Affairs, is substituted for Denis McDonough. *See* Def. Reply Supp. Mot. Summ. J., ECF [72], at 1 n.1.

[2] Initially, plaintiff also brought a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), but has since withdrawn that claim. *See* Pl. Resp., ECF [59], at 10.

477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove "that there is an absence of evidence to support the non[-]moving party's case." *Id.*; *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex Corp.*, 477 U.S. at 324.

A party asserting that a fact is or is not genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed R. Civ. P. 56(c)(1)(A). Where the party opposing summary judgment is self-represented, the court "must consider as evidence . . . all of [that party's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citations omitted).

## BACKGROUND

### A. Factual Background

On April 23, 2020, Chief of Police Ryan Hauser ("Hauser") hired plaintiff as a Police Officer at the United States Department of Veteran Affairs ("VA") Portland Health Care System ("Portland VA"), subject to the completion of a one-year probationary period. Decl. Ryan Hauser Supp. Def. Mot.

Summ. J. ("Hauser Decl."), ECF [44], ¶¶ 1, 3. Hauser was aware that plaintiff is African American at the time of plaintiff's hiring. *Id.* ¶ 3. Plaintiff began his employment as a probationary VA Police Officer on July 19, 2020. *Id.* at Ex. B, at 1; Compl., ECF [1], ¶ 10.

1. *Pre-Academy and Academy Training*

All VA Police Officers must be certified. *Id.* ¶ 4. To become certified, new VA Police Officers must complete Police Officer Standardized Training ("Academy Training") at the Law Enforcement Training Center (the "Academy") in Little Rock, Arkansas. *Id.* ¶ 4 & Ex. E, ¶ 24; Decl. Joshua Keller Supp. Def. Mot. Summ. J. ("Keller Decl."), ECF [46], Ex. A ("Coltrain Dep."), at 65:3-68:2 (all deposition references to transcript pagination unless stated otherwise); Decl. Jeremy Zundel Supp. Def. Mot. Summ. J. ("Zundel Decl."), ECF [49], ¶ 2. During Academy Training, VA Police Officers must meet the Academy's firearms and physical fitness standards. Hauser Decl. Ex. B, at 1. The firearms standard includes a "minimum of 40 hits on a standard sized FBI 'Q' target out of 50." *Id.*

A new VA Police Officer cannot continue to be a VA Police Officer if they fail to meet these standards during Academy Training. *Id.* ¶¶ 4, 6 & Ex. E, ¶ 24. New Portland VA Police Officers are first trained in Portland before attending Academy Training, to help them meet the firearms and physical fitness standards. Coltrain Dep. 66:18-69:11.

Plaintiff was initially scheduled to start Academy Training on October 26, 2020, but asked to postpone that training on September 29, 2020. Hauser Decl. Ex. E, ¶¶ 19-21. His request was approved, and plaintiff was rescheduled for the next Academy Training class to start on January 4, 2021. *Id.* In November 2020, all Academy Training was suspended due to the COVID pandemic. *Id.* ¶¶ 17, 19. As a result, plaintiff's Academy Training was delayed until March 22, 2021. *Id.* ¶ 19.

Plaintiff continued his pre-Academy Training, which included firearms and physical fitness training, until his Academy Training began. *See* Coltrain Dep. 66:18-20, 68:15-23. During that time, plaintiff struggled with firearms training. Hauser Decl. ¶¶ 5, 8; *see* Zundel Decl. Ex. A, at 1. By February 9, 2021, plaintiff had fired more than 2,300 rounds with his duty pistol at the shooting range but could not meet the Academy's firearms standards; in contrast, new VA Police Officers can typically meet

the firearms standards after firing between 200 to 300 rounds. Hauser Decl. ¶ 8 & Ex. E, ¶ 31. According to Lieutenant Jeremy Zundel ("Zundel"), in his career as a certified VA Firearms Instructor, no other officer had received as much personal training as plaintiff did. *See* Zundel Decl. Ex. A, at 1. Plaintiff also received more training than any of his peers during their pre-Academy Training. *See id.*

After a captain told Hauser that plaintiff needed more firearms training, as of February 1, 2021, Hauser changed plaintiff's shift from night to day so that plaintiff could get additional firearms training at the outdoor range. Hauser Decl. ¶¶ 5-7; *see* Coltrain Dep. 187:2-7, 191:21-24. Hauser was concerned that without additional training, plaintiff would fail Academy Training and lose his job. Hauser Decl. ¶¶ 5-6. Plaintiff agreed that he needed additional training and that it was appropriate for him to be moved to day shift to receive that additional training. Coltrain Dep. 191:21-192:10. Although plaintiff received additional pay for working night shifts, Hauser Decl. ¶ 5, plaintiff testified that he "should have never [been] put [] on nights because [he] need[ed] "to work on everything during the day[,]" Coltrain Dep. 187:12-14. On or about February 11, 2021, plaintiff's day shift was changed to a different day shift, with no change in pay. Hauser Decl. ¶ 7.

Based on his pre-Academy Training struggles, on February 9, 2021, plaintiff was given a Notice of Warning that if he did not improve, he may not meet the firearms or physical fitness standards during Academy Training and could lose his job. *See id.* ¶¶ 8-9 & Ex. B. Plaintiff did not receive a negative evaluation, discipline, demotion, or termination because of the Notice of Warning. *Id.* ¶ 9.

On March 5, 2021, plaintiff hit the standard "Q" target forty times, which would satisfy the Academy's firearms standard. *See* Zundel Decl. Ex. A, at 1.

Plaintiff also struggled with physical fitness. *See* Hauser Decl. Ex. B, at 1. On March 11, 2021, plaintiff refused to participate in physical fitness training at the track while other officers participated. *Id.* at Ex. C, at 1.

On March 22, 2021, plaintiff began Academy Training. Coltrain Dep. 66:1-12, 87:6-8. Plaintiff graduated from the Academy in May 2021, after meeting the firearms and physical fitness standards. *Id.* at 76:8-12, 88:24-89:3, 117:15-21, 222:12-16. Plaintiff testified that upon graduation, he

had the "knowledge and training on" how to perform the full range of VA Police Officer duties. *See id.* at 239:18-240:12.

2. *Field Training Officer Program*

When a new VA Police Officer graduates from the Academy, they are required to participate in the Field Training Officer Program ("FTOP") upon return to the Portland VA. Zundel Decl. ¶¶ 3-5. The FTOP is an orientation program that prepares new VA Police Officers to work independently at the Portland VA and pairs each new VA Police Officer with a more experienced VA Police Officer. *Id.*

On May 17, 2021, plaintiff returned to work at the Portland VA. Zundel Decl. ¶ 5. Plaintiff was assigned to Zundel's detail and paired with Officer Jonathan Snodderly ("Snodderly") for the FTOP. *Id.*; Coltrain Dep. 267:23-268:8. On May 18, 2021, when Snodderly identified errors on plaintiff's reports, plaintiff approached Zundel. Coltrain Dep. 266:3-269:20; *see* Zundel Decl. Ex. B. Among other things, plaintiff told Zundel in a raised voice:

- That he was "tired of people looking over [his] shoulder at [his] computer screen" and "of being treated like a kid";
- "I see you guys checking your watch and timing me when I do things, and I'm not going to be time stamped. I'm a grown ass man"; and
- "I am a 41-year-old man and deserve respect[.]"

Coltrain Dep. 266:3-269:20. When Zundel tried to explain the FTOP, plaintiff interrupted him. *Id.* at 269:21-270:8, 273:15-274:4; Zundel Decl. Ex. B, at 2. Zundel asked if plaintiff did not want to participate in the FTOP, and plaintiff became more upset and said, "Don't come at me with that." Zundel Decl. Ex. B, at 2. Zundel again tried to explain the FTOP to plaintiff, and plaintiff again interrupted him to give his opinion about the FTOP. *See id.* Zundel later summarized this interaction in a Report of Contact form. *See id.*

On May 23, 2021, Zundel gave plaintiff a Letter of Expectation regarding "[u]nprofessional [c]ommunication with a [s]upervisor." *Id.* ¶ 6 & Ex. C, at 1. The letter notified plaintiff that his conduct was "unacceptable" and explained that he is expected to be "respectful and courteous" when interacting with others, including supervisors and coworkers. *Id.* ¶ 6 & Ex. C, ¶¶ 3-6. Plaintiff refused to sign the letter. Coltrain Dep. 272:16-273:6; *see* Zundel Decl. Ex. C, at 2.

Portland VA Police Officers are evaluated for psychological fitness every year. Hauser Decl. ¶ 13. Plaintiff's evaluation was scheduled for June 10, 2021. *Id.* As part of that evaluation, Major Damon Mancuso ("Mancuso") asked Zundel to complete an Officer Conduct Survey in Preparation for Annual Certification of Psychological Fitness ("Survey") for plaintiff. Zundel Decl. ¶ 7. On or about May 31, 2021, Zundel completed the Survey. *Id.* ¶¶ 7-8 & Ex. D. As part of the Survey, [redacted]

3. *Other Alleged Discrimination*

Plaintiff claims that on unspecified dates during his employment, he was subject to other allegedly discriminatory conduct. Plaintiff states that Sergeant Nathan Overson ("Overson") bumped into or pushed plaintiff multiple times and yelled at plaintiff on one occasion to "[g]et the fuck out of [the office]." Coltrain Dep. 249:23-250:5. Plaintiff also asserts that other unidentified individuals were given "special projects and ride alongs" but that he was not afforded those opportunities. *Id.* at 192:11-15. Plaintiff believes that Zundel, Roth, and Sergeant Jay Boatright ("Boatright") falsified his targeting numbers during marksmanship assessments. *See id.* at 212:9-214-22. Finally, plaintiff states that on multiple instances during one twelve-hour shift, Snodderly showed plaintiff "photographs of Ku Klux Klan members while stating that what they did was legal and constitutional at the time." *Id.* at 217:15-219:13. Plaintiff testified during his deposition that he reported Snodderly's conduct to Lieutenant Dwayne Chaney ("Chaney"); however, he could not recall when he made that report. *Id.* at 217:21-218:5.

4. *Plaintiff's Termination*

All VA employees are required to complete annual Privacy and Health Insurance Portability and Accountability Act ("HIPAA") trainings. Decl. Jennie Fleischmann Supp. Def. Mot. Summ. J. ("Fleischmann Decl."), ECF [47], ¶ 5. On July 20, 2020, and July 4, 2021, Plaintiff completed these annual trainings. *Id.* ¶ 6 & Ex. A. During both trainings, plaintiff was required to review modules on prohibitions against video recording VA employees, patients, or other visitors, without their consent. *Id.* ¶¶ 6-7, 9 & Ex. B, at 11; Ex. C, at 9. During the July 20, 2020, training, plaintiff was required to review a

module on Veterans Health Administration Directive 1078 ("VHA Policy 1078"), which states, in relevant part, that VA employees "intending to" create "video [] recordings for official purposes must obtain" written consent from anyone being recorded and that a VA Police Officer cannot covertly record persons at the Portland VA for law enforcement purposes without approval from "both the VA medical facility Director and the chief law enforcement officer of the facility." Decl. Brooke Smith Supp. Def. Mot. Summ. J. ("Smith Decl."), ECF [51], ¶ 9 & Ex. C, at 4, 16. During the July 4, 2021, training, plaintiff was required to review a module stating that "VA employees may not secretly take pictures or record conversations of anyone (e.g., Veterans, visitors or coworkers) without consent from the other party." Fleischmann Decl. ¶¶ 6-7, 9 & Ex. C, at 9.

On July 9, 2021, plaintiff used a VA-issued cell phone clipped to his chest to record two separate videos of VA employees and patients in treatment areas. *See* Smith Decl. ¶ 4 & Ex. B, at 1-2: Coltrain Dep. 224:19-225:7. On or about July 12, 2021, Hauser received a written report from Zundel, which was based on information from Officer Lindsay Young ("Young"), stating that plaintiff had recorded one or more patients in patient treatment areas. Hauser Decl. ¶¶ 15, 17 & Ex. D, at 2. Hauser understood the report to also state that Young, who had more experience than plaintiff, had instructed plaintiff not to record patients in treatment areas, but plaintiff continued to do so. *Id.* Hauser promptly asked the VA Privacy Office "to investigate [p]laintiff's reported conduct to advise on whether there were any privacy issues arising from that conduct." *Id.* ¶ 19.

On July 16, 2021, VA Privacy Officer Brooke Smith, after reviewing the two recordings and consulting with fellow VA Privacy Officer Phillip Cauthers ("Cauthers"), determined that plaintiff's conduct violated two VA privacy policies, including VHA Policy 1078, "because written consent was not obtained from the Veteran who was recorded and the phone's use does not fall under surveillance or authorized covert recording." Smith Decl. ¶ 5 & Ex. B, at 1.

On July 16, 2021, Cauthers emailed Hauser that plaintiff violated VA privacy policies. *Id.* at Ex. B, at 1-2. Thereafter, Hauser determined that plaintiff, a probationary employee, was unsuitable to be a VA Police Officer, and terminated his employment. *See* Hauser Decl. ¶ 21. Hauser made this

determination based on the VA Privacy Office's finding that plaintiff violated VA privacy policies after completing privacy training; Zundel's report about plaintiff recording patients; plaintiff's refusal to participate in physical fitness training on March 11, 2021; and plaintiff's conduct during his interaction with Zundel on May 18, 2021. *Id.*

On July 17, 2021, plaintiff received a notice of his termination. Compl. ¶ 47.

5. *Plaintiff's Protected Activity*

On February 16, 2021, plaintiff initiated contact with a counselor at the VA Office of Resolution Management about perceived discrimination. Def. Mot. Summ. J. ("Def. Mot."), ECF [43], at 13 (citing Compl. ¶ 42).

On June 4, 2021, plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.* (citing Compl. ¶ 98). From July 7 to 15, 2021, a team overseeing an investigation into plaintiff's EEOC complaint interviewed several VA employees, including plaintiff and Hauser. Decl. Keith Lamb Supp. Def. Mot. Summ. J. ("Lamb Decl."), ECF [52], ¶ 5; Hauser Decl. ¶ 23. Plaintiff participated in investigative interviews on July 7, 9, and 15, 2021. Lamb Decl. ¶ 5.

On August 10, 2022, EEOC Administrative Judge Matthew N. Mong issued a Decision Without Hearing in favor of the VA. Keller Decl. Ex. B.

**B. Procedural History**

Plaintiff initiated this action on November 10, 2022. On December 4, 2024, defendant filed the instant motion for summary judgment.

## DISCUSSION

**A. Admissibility of Evidence**

As a threshold matter, defendant objects to two declarations from Chaney and Officer Guy Taylor ("Taylor") that plaintiff offers in support of his response. *See* Def. Reply Supp. Mot. ("Def. Reply"), ECF [72], at 6-8.

A motion for summary judgment must be supported by evidence that would be admissible at trial. Fed. R. Civ. P. 56(c)(2), (4). An unsworn declaration can have the force and effect of a sworn

affidavit, and therefore be used in lieu of the affidavit requirement, if it is signed, dated, and carries a declaration that the statement is true under penalty of perjury. 28 U.S.C. § 1746; *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1052 (D. Or. 2010). Because Chaney's declaration is neither sworn nor given under penalty of perjury, *see generally* Decl. Dwayne Chaney, ECF [63-7], plaintiff cannot use Chaney's declaration to satisfy his summary judgment burden.

Further, a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the [] declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Taylor states in his declaration that "Damon Mancusso [*sic*] video recorded multiple people on his own cell phone and was never disciplined. Jesse Baker allowed an employee to record on his cell phone from a CCTV and was never disciplined." Decl. Guy Taylor, ECF [63-8], at 2. However, Taylor does not explain how he knows about either individual's alleged conduct. Nor do these statements establish that either individual recorded patients in violation of VA privacy policies. Because nothing in the record shows personal knowledge as to these assertions, plaintiff also cannot use these statements to satisfy his summary judgment burden.

**B. Summary Judgment**

Defendant moves for summary judgment on all of plaintiff's claims, arguing that plaintiff fails to raise a triable issue as to any claim. The Court addresses each claim in turn.

1. *Title VII Claims*

Plaintiff asserts discrimination, retaliation, and hostile work environment claims pursuant to Title VII. Defendant argues that there is no evidence to support a *prima facie* case as to any of the claims, and to the extent that plaintiff can establish a *prima facie* case, defendant had a legitimate, non-discriminatory reason for his actions, and plaintiff cannot show that those reasons were pretextual.

a. Discrimination

To establish a *prima facie* case of race discrimination based on circumstantial evidence, plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside his protected class

were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1003 (9th Cir. 2019). "Under the *McDonnell Douglas* framework, the requisite degree of proof necessary to establish a prima facie case [] on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023) (citation modified) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002)).

Defendant does not dispute that plaintiff is a member of a protected class or was qualified for the position. Defendant argues that except for plaintiff's termination, none of the asserted conduct constituted adverse employment actions and that plaintiff cannot show that similarly situated individuals outside his protected class were treated more favorably.

i. *Adverse Employment Actions*

Plaintiff asserts the following adverse employment actions: (1) inadequate training; (2) change to a day shift; (3) the Notice of Warning; (4) the insertion of allegedly false information [redacted] into his psychological evaluation; and (5) termination.

"[A]n adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (second alteration and ellipses in original) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000); and citing *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir. 2002)).

Plaintiff has not demonstrated that any of the first four asserted actions materially affected "the compensation, terms, conditions, or privileges" of his employment." *Id.* As for the alleged inadequate training, plaintiff points to his own declaration, as well as recordings of audio testimony from Taylor, Detective Edward Ortiz ("Ortiz"), and Zundel, to argue that there were disparities in training opportunities. However, plaintiff does not explain how any particular facts from his declaration or the recordings demonstrate that his training was inadequate compared to that of other VA Police Officers.[3] Moreover,

[3] Plaintiff also fails to cite to particular portions of the recordings, which include a total of more than two hours of testimony, to support his arguments. To avoid summary judgment, plaintiff must support his position with specific

Taylor and Ortiz admit that they only witnessed brief portions of plaintiff's firearms training on one or two occasions, and thus lack personal knowledge as to whether plaintiff indeed received either less or inadequate training. *See* ECF [65], Ex. B (Taylor), at 20:51-22:03, 27:15-27:32; Ex. C (Ortiz), at 13:07-16:28.

As for the change to a day shift, although this action resulted in the loss of additional pay that plaintiff received for working night shifts, plaintiff agreed to change to the day shift so that he could receive more firearms training at the outdoor range. His contention that changing to the day shift "ultimately proved to not provide any benefit to him[,]" Pl. Resp., ECF [59], at 3, is conclusory, somewhat irrelevant, and appears to be belied by the fact that he passed Academy Training.

As for the Notice of Warning, plaintiff does not point to any evidence suggesting that the notice had any negative effect on his employment. His conclusory assertion that "[t]he Notice of Warning was used as a pretext by superiors to document a negative performance record, rather than as a tool for improvement[,]" is not supported by any evidence in the record. *Id.* Additionally, courts have concluded that "[w]ritten warnings are generally 'not adverse employment actions where they do not materially affect the terms and conditions of employment.'" *Wilkins v. Brandman Univ.*, No. 3:17-cv-01099-BR, 2019 WL 3558172, at *13 (D. Or. Aug. 5, 2019) (internal quotations marks omitted) (alteration in original) (collecting cases), *appeal dismissed*, No. 19-35703, 2020 WL 773489 (9th Cir. Feb. 4, 2020).

Finally, as for the psychological evaluation, plaintiff does not proffer any evidence that the psychological evaluation "created a barrier to [p]laintiff's success and future employment" or otherwise negatively affected his employment. Pl. Resp. 3. Based on these findings, the only adverse employment action to support a discrimination claim in this case is plaintiff's termination.

---

facts by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). "The [] [C]ourt need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). These rules apply with equal force to self-represented litigants. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted) ("Pro se litigants must follow the same rules of procedure that govern other litigants."), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc).

ii. *Similarly Situated Employees*

Although plaintiff asserts that other employees similarly violated VA privacy policies but were not terminated, plaintiff does not identify a single other such employee or specify the treatment that they allegedly received. Plaintiff states that he "will show documentation that other officers had committed this infraction before, and what the punishment or policy was for them, and how that differs from his termination[,]" Pl. Resp. 5, yet he has not provided such evidence anywhere in the record. His conclusory assertions that he "was not the first officer to violate the said policy, and he should not have been terminated based on this incident alone" and that "[t]he Privacy Office did not conduct a proper investigation prior to the termination" are insufficient to satisfy the fourth element of plaintiff's *prima facie* case. *Id.* Accordingly, summary judgment on plaintiff's discrimination claim is appropriate.

b. Retaliation

"To make out a *prima facie* case of retaliation [under Title VII], an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Again, "under the *McDonnell Douglas* framework, the requisite degree of proof necessary to establish a prima facie case [] on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Opara*, 57 F.4th at 722 (citation modified) (quoting *Villiarimo*, 281 F.3d at 1062). Defendant concedes that plaintiff engaged in protected activity but argues that except for plaintiff's termination, none of the other asserted conduct constitutes an adverse employment action or has a causal link to the protected activity.

i. Prima Facie *Case*

Plaintiff asserts the following adverse employment actions: (1) a hostile work environment in the form of (a) Hauser allowing discriminatory conduct against plaintiff to continue to after being notified of that conduct; (b) Overson bumping into plaintiff multiple times and yelling at plaintiff once to "[g]et the fuck out of the office"; (c) Roth instructing plaintiff not to take photographs of plaintiff's targets while at shooting practice; (d) Zundel, Roth, and Boatright falsifying plaintiff's targeting numbers; (e) Mancuso

inserting false information into plaintiff's psychological evaluation; and (f) Snodderly showing plaintiff "photographs of Ku Klux Klan members while stating that what they did was legal and constitutional at the time" multiple times during one shift; and (2) termination. Coltrain Dep. 249:23-250:5, 217:15-219:13.

For purposes of a retaliation claim, an adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter [employees] from engaging in protected activity." *Ray*, 217 F.3d at 1242-43 (internal quotation marks and citation omitted).

As for the alleged conduct constituting a hostile work environment, plaintiff does not show that any of this conduct constitutes an adverse employment action. Plaintiff does not point to any evidence to support the conclusory assertion that "[s]upervisors and colleagues were aware of [p]laintiff's protected activity and actively retaliated against him." Pl. Resp. 7. Except for Hauser, nothing in the record shows that any of the other identified individuals ever knew of plaintiff's protected activity and thus acted based on a retaliatory motive. *See Ray*, 217 F.3d at 1242. As for Hauser, there is no evidence to support the allegation that Hauser allowed alleged discriminatory conduct against plaintiff to continue after being notified. Additionally, nothing in the record establishes when any of the alleged actions occurred or when any individual other than Hauser knew of plaintiff's protected activity. Plaintiff thus also fails to establish a causal link between his protected activity and those actions. Thus, the only adverse employment action to support *a prima facie* retaliation claim is plaintiff's termination.

ii. *Legitimate, Non-Retaliatory Reasons*

"Once [a plaintiff] establishes a *prima facie* case for retaliation, the burden shifts to the [defendant] to produce evidence showing that the challenged actions were done for non-retaliatory purposes." *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir. 2018). In other words, the defendant "must show that [the challenged] actions were, in fact, supported by neutral reasons." *Id.*

Based on the evidence in the record, defendant has met his burden of supplying evidence of legitimate, non-retaliatory reasons. Defendant shows that Hauser terminated plaintiff after determining that plaintiff was unsuitable to be a VA Police Officer on the following grounds: plaintiff (1) violated privacy policies when he filmed patients and continued to film even after being instructed by a more

experienced officer not to do so; (2) refused to participate in physical fitness training on March 11, 2021; and (3) was unprofessional and disrespectful to a supervisor on May 18, 2021. These are legitimate, non-retaliatory reasons for plaintiff's termination.

iii. *Pretext*

If a defendant demonstrates legitimate, non-retaliatory reasons, "the burden then shifts back to [the plaintiff] to point to evidence that may show the [defendant]'s asserted rationale to be mere pretext." *Id.* A plaintiff can establish pretext "(1) directly, by showing that unlawful discrimination more likely [than not] motivated the employer; [or] (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable; or via a combination of the[se] two kinds of evidence." *Opara*, 57 F.4th at 723 (first and third alterations in original) (internal quotation marks omitted) (quoting *Chuang*, 225 F.3d at 1127). "When assessing the validity of an employer's stated reason for its actions, the key is not whether the reason is 'objectively false' or 'baseless' but whether the employer 'honestly believed its reasons for its actions.'" *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024) (quoting *Villiarimo*, 281 F.3d at 1063). "At the pretext stage, the plaintiff's burden remains low, and 'very little[] evidence is necessary to raise a genuine issue of fact regarding an employer's motive.'" *Id.* (alteration in original) (quoting *Opara*, 57 F.4th at 723-24). "Nevertheless, a plaintiff must present some evidence that goes to the defendant's motivation—either by directly showing that it was discriminatory or by contesting the defendant's claimed motivation." *Id.* (citing *Villiarimo*, 281 F.3d at 1063; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

"Temporal proximity can support both a *prima facie* case of retaliation and a showing of pretext." *Id.* (citation omitted). "However, the inquiry is fact-specific and depends on both the degree of proximity and what, if any, other evidence supports an inference of pretext." *Id.* at 1059-60 (citing *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003)). "Even cases involving very close temporal proximity have generally featured independent evidence of discrimination or retaliation." *Id.* at 1060 (collecting cases). "Evidence of temporal proximity is less persuasive if it also supports a defendant's independent reason for an adverse action." *Id.*

Plaintiff argues simply that he "was targeted because he made an [EEOC] complaint, and the privacy policy justification was merely a reason to justify his firing." Pl. Resp. 7 (citation omitted). However, again, plaintiff does not provide any evidence to support these arguments. Moreover, although plaintiff does not make a temporal proximity argument, the temporal proximity in this case also does not demonstrate pretext. It is undisputed that plaintiff filed a formal complaint with the EEOC on June 4, 2021, participated in investigative interviews on July 7, 9, and 15, 2021, and was terminated on July 17, 2021. However, "temporal proximity is typically accompanied by other evidence in cases concluding [that] stated reasons were pretextual." *Kama*, 107 F.4th at 1061 (collecting cases). Temporal proximity alone, without any other direct or circumstantial evidence, is usually not compelling enough to establish pretext. *See Dawson v. Entek Int'l*, 630 F.3d 928, 936-37 (9th Cir. 2011) (finding pretext where employee was terminated two days after filing complaint with human resources and employer specifically referred to protected activity during termination); *Bell v. Clackamas County*, 341 F.3d 858, 866-67 (9th Cir. 2003) (finding pretext where employee was terminated four days after filing complaints and there was evidence of supervisors' "contemporaneous displeasure" with employee's complaints); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996) (finding pretext where employee was removed from her position one day after filing complaint and supervisor had threatened to dissuade her from filing complaint).

Moreover, any temporal proximity argument in this case is undermined by the temporal proximity between plaintiff's violation of VA privacy policies—one of the stated reasons for his termination—and termination. Plaintiff recorded patients on July 9, 2021, eight days before his termination, and was determined to have violated VA privacy policies on July 16, 2021, one day before his termination. Although the speed with which Hauser made the termination decision is notable, *see Bell*, 341 F.3d at 866-67, "[w]hen there are equally likely causes of [p]laintiff's termination that arise during the same period, temporal proximity does not establish that 'unlawful discrimination more likely [than not] motivated the employer[,]'" *Kama*, 107 F.4th at 1061-62 (third alteration in original) (quoting *Opara*, 57 F.4th at 723). Because plaintiff does not point to any evidence to support an inference of pretext, plaintiff fails to raise a triable issue as to whether defendant's asserted reasons are pretextual. Accordingly, summary judgment on

plaintiff's retaliation claim is appropriate.

c. *Hostile Work Environment*

To prove a hostile work environment claim based on race, plaintiff must show "'(1) that he was subjected to verbal or physical conduct of a racial [] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.'" *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017) (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)).

As described above, plaintiff asserts that that the following conduct created a hostile work environment: (1) Overson bumping into plaintiff multiple times and yelling at plaintiff once to "[g]et the fuck out of the office"; (2) Roth instructing plaintiff not to take photographs of plaintiff's targets while at shooting practice; (3) Zundel, Roth, and Boatright falsifying plaintiff's targeting numbers; (4) Mancuso inserting allegedly false information into plaintiff's psychological evaluation; and (5) Snodderly showing plaintiff "photographs of Ku Klux Klan members while stating that what they did was legal and constitutional at the time" multiple times during one shift. Coltrain Dep. 249:23-250:5, 217:15-219:13.

Defendant does not dispute the second element but argues that there is no evidence to show discriminatory or retaliatory animus as to the first four asserted actions. Defendant also argues that the alleged conduct is insufficiently severe or pervasive to constitute a hostile work environment. Defendant further argues that Overson and Snodderly's conduct cannot support a hostile work environment claim against defendant under either a theory of vicarious liability or negligence.

i. *Conduct of a Racial Nature and Severe or Pervasive Conduct*

In determining whether conduct was sufficiently severe or pervasive to render working conditions abusive, "[a] plaintiff must show that the work environment was both subjectively and objectively hostile." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (citation omitted). Here, plaintiff has established subjective hostility through his deposition testimony and complaints to his union representatives, supervisors, and the EEOC. *See id.*; *Reynaga*, 847 F.3d at 687.

In assessing the objective hostility of a work environment, courts consider the "'frequency

of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Reynaga*, 847 F.3d at 687 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). "'The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.'" *Id.* (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)).

As an initial matter, plaintiff does not point to any evidence to suggest that the first four events were of a racial nature. As for the fifth event, Snodderly's conduct was clearly of a racial nature; however, isolated instances of offensive conduct are usually insufficient to demonstrate a severe or pervasive hostile work environment. *See, e.g.*, *Reynaga*, 847 F.3d at 687 (quoting *Faragher*, 524 U.S. at 787-88) ("'[I]solated incidents (unless extremely serious)' are not sufficient to create an actionable claim under Title VII[.]"); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798-99 (9th Cir. 2003) (holding that a few instances of racial slurs, mocking the plaintiff's pronunciation and appearance, and other offhand remarks by co-workers and supervisor over two-and-a-half years were insufficient to show hostile work environment); *Vasquez*, 349 F.3d at 643-44 (holding that two racial comments, two instances of yelling, and false reports about the plaintiff insufficient to show hostile work environment); *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000) (holding that single incident of sexual assault by coworker insufficient to show hostile work environment); *Henry v. Regents of the Univ. of Cal.*, 644 F. App'x 787, 788-89 (9th Cir. 2016) (holding that isolated "noose incident[,]" where the plaintiff failed to show "racial motive behind the noose . . . or that the noose was directed at him personally[,]" was insufficient to show hostile work environment). Nevertheless, although Snodderly's conduct was an isolated incident and hostile work environment claims are typically "based on the cumulative effect of individual acts[,]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002), *superseded by statute on other grounds as stated in Sanger v. NVR, Inc.*, No. 5:24-CV-438-D, 2025 WL 1998005, at *3 (E.D. N.C. July 17, 2025), "the Supreme Court has never held that a severe or egregious incident, even if isolated, can never be actionable[,]" *Osby v. Potter*, No. C 06-01732 CRB, 2007 WL 1176636, at *5 (N.D. Cal. Apr. 20, 2007) (declining to conclude that "harassment by an anonymous postal employee using hateful and intimidating speech, such as the

symbol of the Ku Klux Klan, is not sufficiently serious to give rise to a claim about the hostility of a workplace environment"); *see Pearson v. Reynolds Sch. Dist. No. 7*, 998 F. Supp. 2d 1004, 1026 (D. Or. 2014) (internal quotation marks and citation omitted) (second and third alterations in original) ("[A]n isolated comment . . . is sufficient to show that the conduct pollute[d] the [plaintiff's] workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position.").

Even assuming that plaintiff could establish an actionable hostile work environment claim based on Snodderly's isolated conduct, however, defendant is entitled to summary judgment because there is no evidence showing that defendant can be held liable for Snodderly's conduct under either a theory of vicarious liability or negligence.

ii. *Employer Liability*

"An employer may be held liable for creating a hostile work environment either vicariously (i.e., through the acts of a supervisor) or through negligence (i.e., failing to correct or prevent discriminatory conduct by an employee)." *Reynaga*, 847 F.3d at 688 (citing *McGinest*, 360 F.3d at 1119).

(a) Vicarious Liability

"An employer is vicariously liable for a hostile work environment created by a supervisor." *Id.* at 689 (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). "A supervisor is a person who can take tangible employment actions against an employee, including effecting 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* (quoting *Vance*, 570 U.S. at 429).

Here, the record shows that Snodderly did not have authority to take tangible employment actions against plaintiff. Accordingly, plaintiff does not raise a triable issue as to whether defendant can be held liable for Snodderly's conduct under a theory of vicarious liability.

(b) Negligence

"In the absence of grounds for imposing vicarious liability, an employer is liable for a hostile work environment created by a plaintiff's co-worker if the employer 'knew, or should have known,

about the harassment and failed to take prompt and effective remedial action.'" *Id.* (quoting *EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 1001 (9th Cir. 2010)).

Plaintiff testified that he reported Snodderly's conduct to Chaney but could not recall when he did so. Even assuming that plaintiff's report to Chaney is sufficient to have put defendant on notice, plaintiff does not present any evidence regarding any remedial action that defendant may (or may not) have taken and therefore does not raise a triable issue as to whether defendant failed to take prompt and effective remedial action. Thus, plaintiff also does not raise a triable issue as to whether defendant can be held liable for Snodderly's conduct under a negligence theory. Accordingly, summary judgment on plaintiff's hostile work environment claim is appropriate.

2. *Section 1981 Claim*

Plaintiff concedes that Title VII is the exclusive remedy for federal employees. Plaintiff's speculation that this case involves unspecified actions that "fall outside of Title VII's scope and protections[,]" Pl. Resp. 10, is insufficient to raise a genuine dispute of material fact. Accordingly, summary judgment as to plaintiff's section 1981 claim is appropriate.

**CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment, ECF [43], is GRANTED. This case is dismissed.

IT IS SO ORDERED.

DATED this 29th day of August, 2025.

Adrienne E. Nelson

Adrienne Nelson
United States District Judge